UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COALITION TO PROTEST THE ) <br> DEMOCRATIC NATIONAL CONVENTION ) <br> et al., ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> THE CITY OF BOSTON, et al. ) <br>  ) <br>  ) <br> Defendants. ) | Docket No. 04-11608-DPW |

## SECOND DECLARATION OF STEVE KIRSCHBAUM

I, Steve Kirschbaum, declare:

1. I make this affidavit based on personal knowledge, except where noted. I believe that information I obtained from others is true and accurate.

2. I am a member of United Steel Workers of America, Local 8751 ("Local 8751"), and a member of the Boston branch of Act Now to Stop War and End Racism ("ANSWER Boston"), each of which is a plaintiff in the above-captioned action.

3. The permit application for the parade route sought by the plaintiffs was filed over one year ago. Attached hereto as Exhibit A are true and accurate copies of applications submitted on or about June 9, 2003, seeking parade and rally permits during the Democratic National Convention ("DNC"). One of the permits includes a request for a permit to march on Causeway.

4. The permit applications list Councilor Chuck Turner and Steven Kirschbaum as primary contacts.

5. Notwithstanding these early applications, city officials failed and refused to act on the various permit requests. For approximately eight months, until March of 2004, we tried to get the City Department of Transportation to act on our permit applications.

6. On or about March 10, 2004, my attorney, John McK. Pavlos, was informed by Richard Loring that our rally and parade permits could not be found, and we re-sent the applications

7. On or about May 6, 2004, I became aware through a Boston Globe article that new permit regulations had been put into place. I am informed by my colleague Peter Cooke that soon after the article, he spoke to Patricia Malone at the Mayor's Office of Consumer Affairs and Licensing, and that she assured him that our previously submitted applications were on file, and that rally space had been reserved for us.

8. Shortly thereafter, we were informed that we needed to submit new applications under the City's new guidelines. On or about June 11, 2004, we complied. Those applications were attached to my previously submitted affidavit in this case.

9. For the City to suggest that we are at fault for delaying filing suit is disingenuous in view of the City's mishandling of our event and parade applications over the course of the past year.

10. The coalition did not seek legal counsel from the ACLU, Bingham McCutchen, or the National Lawyers Guild until July of this year. Whatever discussions any of the attorneys from those groups may have had with the City prior to July 2004 were not on behalf of the Coalition or any member of the Coalition. Indeed, ANSWER's attorneys, John Pavlos and Mara Verheyden-Hilliard, sent a letter to the ACLU and a separate letter to the NLG, expressly requesting that no action be taken on ANSWER' behalf. (Exhibits B & C).

11. Marching in front of the Fleet Center is an essential part of the symbolism of the march. We will be there to confront the war policies of the Democratic Party. Marching to the site of the DNC is central to our symbolic speech - a march anywhere else strips the march of its meaning, content, and power, and would be an act of political censorship. Marching to and symbolically challenging the apartheid wall in front of the DNC on Causeway Street is at the heart of our message. In a sense, the wall is the message, in that our goal is to challenge the DNC and the Democratic Party for the very act of segregating themselves behind a impermeable shield of indifference and bigotry. In the strongest possible terms we oppose, and we affirmatively challenge, the DNC's and the Democratic Party's efforts to wall themselves off from us. Marching to the doorstep of the DNC, along the Wall, is the very point of our protest and our parade.

12. We categorically reject the existence, legitimacy, and constitutionality of the internment pen. Our march by the pens has them as a target of our protest against police state

tactics--they are a target of the march, not our destination, and not an acceptable alternative. The very existence of the internment pens and the City's attempt to cage political dissenters is a gross affront to our First Amendment Rights. The City's plan to banish protest into pens is outrageous, unacceptable, and is clearly an attempt to label our political speech as a crime. We cannot even consider this as an alternative.

Signed under the pains and penalties of perjury this __22nd__ day of July, 2004.

/s/ Steve Kirschbaum
Steve Kirschbaum