UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE COALITION TO PROTEST THE ) <br> DEMOCRATIC NATIONAL CONVENTION, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF BOSTON, et al., ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION <br> NO. 04-11608 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEY FEES**

Pursuant to 42 U.S.C. § 1988, the plaintiffs (the "Plaintiffs") seek an award of attorney's fees and costs. The Plaintiffs brought the above-captioned action pursuant to 42 U.S.C. § 1983 alleging violations of the First Amendment rights to assemble, march, and protest during the Democratic National Convention in Boston in July 2004. On or about July 22, 2004, the Court issued an affirmative injunction directing the defendants to issue the Plaintiffs a permit for a rally and march that included a parade route along Causeway Street in front of the FleetCenter. As the prevailing parties in the litigation, the Plaintiffs are entitled to an award of attorney's fees and costs.

## I.    BACKGROUND

The Plaintiffs, led by the non-profit organization Act Now to Stop War and End Racism ("ANSWER"), are a collaboration of private individuals and public interest groups that sought to demonstrate their opposition to the Democratic Party platform by a symbolic march to the site of the Democratic National Convention ("DNC"). To this end, ANSWER applied to the City of Boston for a permit to hold a rally and parade along a route that included a stretch of Causeway Street ("Causeway"), that fronted the DNC site at the FleetCenter. The Plaintiffs had applied for permits to

-2-

march this route beginning July 25, 2004 (the day before the formal opening of the DNC) and continuing each day from July 26 – July 29.  The July 25th parade was to be the Plaintiffs' main event, which they hoped would draw as many as 2,000 or more marchers.  The rallies during the remainder of the week were expected to be much smaller.  The defendants rejected the Plaintiffs' parade applications, and instead approved an alternative parade route that denied the Plaintiffs access to Causeway, the FleetCenter, and the DNC.

On July 19, 2004, the Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief on the ground that the City-approved route did not pass Constitutional muster under the First and Fourteenth Amendments.  After detailed briefing by both sides, two days of hearings, and a site visit by the Court and the parties, the Court concluded that that the City's prohibition of the Causeway parade on July 25th "burden[ed] substantially more speech than necessary to further the government's legitimate interests," and ordered the City to issue a permit allowing the Plaintiffs to march on Causeway to the site of the DNC[1].  See July 23, 2004, Memorandum Regarding Motions for Preliminary Injunctions.

## **Argument**

I. **As the Prevailing Party in a Civil Rights Action, the Plaintiffs are Entitled to an Award of Fees.**

Title 42 U.S.C. § 1988(b) provides, in pertinent part:  "In any action or proceeding to enforce the provisions of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory."  *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001) (citations omitted).

"Typically, achieving prevailing party status requires a plaintiff to show that he succeeded on an important issue in the case, thereby gaining at least some of the benefit he

---

[1] The Court denied relief with respect to the Plaintiffs' July 26 – 29 permit applications.

sought in bringing suit." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Put another way, 'a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). A finding of "prevailing party" status may be defeated by a showing that the relief obtained was "purely technical or *de minimis*." *Id.* at 294.

Applying these principles here, the Plaintiffs are plainly entitled to an award of attorney's fees. The Plaintiffs wanted to march on Causeway. In violation of the First Amendment, the defendants refused to permit the march to proceed on Causeway. The Plaintiffs brought suit pursuant to the federal Civil Rights Act, 42 U.S.C. § 1983, to vindicate their First Amendment right to engage in protected speech at one of the archetypical political events in our system of government – the nominating convention of the Democratic Party. The Court found that the City's refusal to issue the requested permit violated the First Amendment, and ordered the defendants to change their position and allow the July 25th rally and parade to proceed along Causeway. The July 25th rally and parade was the Plaintiffs' main event for the week of the DNC. There is no question that the court's order "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff." *Gay Officers Action League*, 247 F.3d at 293. Because the Plaintiffs were the prevailing parties in a § 1983 civil rights action, an award of attorney's fees is "virtually obligatory." *Id.*

## II. THE FEES AND COSTS THE COALITION SEEKS ARE REASONABLE.

### A. The fees sought are presumptively reasonable.

Reasonable attorney's fees under Section 1988 are calculated by using the lodestar method, which multiplies the number of hours reasonably expended on the litigation times a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984). Application of the lodestar method to this case shows that the Plaintiffs' attorneys incurred fees of $46,585.33. That total reflects only the fees reasonably and necessarily incurred by the Plaintiffs in seeking the

injunction. There is a strong presumption that the lodestar represents a reasonable fee. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). Thus, unless the defendants can point to specific evidence to the contrary, the fees sought are presumed reasonable.

### B. Tally of Fees Sought

Submitted herewith are the Affidavit of John Reinstein and Affidavit of Neil McGaraghan, counsel for the Plaintiffs, setting forth as follows the hours reasonably expended on the Plaintiffs' case, the billing rates of the Plaintiffs' attorneys, and fees incurred in connection with the litigation:

| Timekeeper | Hours | Rate | Value |
| --- | --- | --- | --- |
| John Reinstein | 27.03 | $400 | $10,813.33 |
| Neil McGaraghan | 81.4 | $360 | $29,304 |
| Eric Heining | 30.8 | $210 | $ 6,468 |
| **Total Fees** | | | $46,585.33 |
| **Costs** | | | $ 5,453.69 |
| **Total fees and Costs** | | | $52,039.02 |

Attached as Exhibit A to the McGaraghan Affidavit is a Bingham McCutchen LLP ("Bingham") invoice reflecting the fees and disbursements incurred by the Bingham attorneys who worked on this matter. Attached as Exhibit A to the Reinstein Affidavit is an ACLU invoice reflecting the fees incurred by Mr. Reinstein for his work on this matter. The Affidavits and supporting records explain the basis for the above-recited fees and costs. The hours billed, the rates charged, the total fees, and the costs are all reasonable and were necessarily incurred in prosecuting this matter. The total of $52,039.02 should be awarded in its entirety.

### C. The Hours Worked Are Reasonable.

The 139.23 attorney hours worked between July 12, 2004, and July 22, 2004[2], are reasonable for a case that involved analysis and presentation of difficult and nuanced constitutional issues under very tight time constraints.

As is evident from the time records attached to the Reinstein Affidavit and McGaraghan Affidavit, the time charges incurred were targeted and narrowly focused. Over a nearly two week period, Mr. McGaraghan billed only 81.4 hours to this matter, which time included meeting with the plaintiffs; meeting with City officials; site visits to the proposed demonstration zone site (including one site visit with the court); drafting affidavits, the complaint, and the preliminary injunction papers; and preparing for and attending two full hearings at which Mr. McGaraghan argued on behalf of the plaintiffs. McGaraghan Affidavit ¶¶ 7 and 11, and Exhibit A thereto. Mr. Heining provided critical research, drafting and logistical support, totaling only 30.8 hours. Id. ¶¶ 5 and 8, and Exhibit A thereto. Mr. Reinstein, whose experience and expertise was essential to the development and presentation of factual and legal arguments, billed only 27.03 hours to the case. Reinstein Affidavit ¶ 6, and Exhibit A thereto

The factual context of this case further highlights the reasonableness of the hours worked. The case required all sides to analyze the contours and reaches of the First Amendment in relatively uncharted territory of the post-9/11 era. The Plaintiffs' parade and protest took place during one of the most high profile political events in our system of government. In the post-9/11 era, such events are testing the limits of traditional notions of civil liberties guaranteed by the First Amendment. A case such as this one is on the frontier of a chapter of American jurisprudence that seeks to define civil liberties in the post-9/11 world, and required both legal and factual development and analysis to be done through that lens. The complexity of the case

---

[2] The Plaintiffs' attorneys were actively working to cause the Defendants to modify their permit policy during the three months prior to this litigation. None of the fees for this related work are sought here. McGaraghan Affidavit. ¶ 10.

was enhanced by the intervention of the United States Secret Service. The number of hours the Plaintiffs' attorneys spent preparing the case is reasonable.

### D.    The Billing Rates Are Reasonable.

Reasonable fees are "to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886 (1984). The billing rates charged by Bingham and the ACLU are reasonable and are in line with prevailing market rates in Boston.

Bingham's usual and customary rate was $360 per hour for Neil McGaraghan's time (81.4 hours); and $210 per hour for Mr. Heining's time (30.8 hours). McGaraghan Affidavit ¶¶ 6-8. As set forth in the Affidavit of Edward P. Leibensperger ("Leibensperger Affidavit"), also submitted herewith, these rates are comparable to the rates charged by comparable firms in Boston for attorneys of similar qualifications and experience performing similar work. Leibensperger Affidavit ¶ 8. Mr. Reinstein's rate was $400 per hour (27.03 hours). Reinstein Affidavit ¶¶ 6-7. As set forth in the Leibensperger Affidavit, Mr. Reinstein's hourly rate is similar to or lower than the rates charged by comparable organizations in Boston for attorneys of similar qualifications and experience performing similar work. Leibensperger Affidavit ¶ 7.

### E.    The Other Costs Were Reasonably Incurred.

As detailed in the McGaraghan Affidavit, Bingham incurred costs of $5,453.69, of which $4,840.76 was for necessary electronic legal research. McGaraghan Affidavit. ¶ 9. The research was conducted under very tight time constraints, and was necessary to fully and fairly address the important issues raised by this case. *Id.* The balance of the costs incurred was for filing fees, routine photocopies, fax, couriers, and the like. *Id.* Section 1988 allows for the reimbursement of such all such research and routine costs.

### F.    The Total Fees And Costs Are Reasonable And Should Be Awarded.

As detailed above, the total fees and costs of $52,039.02 is a reasonable award. The issues raised by this case were weighty, nuanced constitutional questions in a difficult context. The City of Boston and Boston Police refused to negotiate a reasonable resolution of the Plaintiffs' parade request and required the matter to be resolved by litigation. The Court's order

requiring the City to issue a permit for the Plaintiffs to march on Causeway street "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff." *Gay Officers Action League*, 247 F.3d at 293. Because the Plaintiffs were the prevailing parties in a § 1983 civil rights action, an award of fees and costs is "virtually obligatory." *Id.*

WHEREFORE, the Plaintiffs respectfully request that the Court allow this motion and award $52,039.02 in reasonable attorney's fees and costs.

Respectfully submitted,

THE COALITION TO PROTEST THE DEMOCRATIC NATIONAL CONVENTION, ET AL.

By their attorneys,

/s/ Neil McGaraghan
Joseph L. Kociubes, BBO # 276360
Neil G. McGaraghan, BBO # 649704
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

John Reinstein, BBO # 416120
AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS
99 Chauncy Street
Boston, MA 02111
(617) 482-3170

Dated:  June 1, 2005

-8-

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June 2005, I caused a true copy of the above document to be served by United States Mail upon the Boston Police Department and the City of Boston Law Department.

/s/ Neil McGaraghan
Neil McGaraghan

LITDOCS/596716.1